**2013-1600, -1601, -1602, -1603, -1604, -1605, -1606, -1607, -1608, -1609, -1610, -1611, -1612, -1613, -1614, -1615, -1616, -1617, -1618**

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

DIGITECH IMAGE TECHNOLOGIES, LLC,

Plaintiff-Appellant,

v.

ELECTRONICS FOR IMAGING, INC.,
SAKAR INTERNATIONAL, INC. (doing business as Vivitar),
GENERAL IMAGING COMPANY, OVERSTOCK.COM, INC.,
NEWEGG, INC. and NEWEGG.COM, INC., XEROX CORPORATION,
TOSHIBA CORPORATION, TOSHIBA AMERICA BUSINESS SOLUTIONS,
INC., TOSHIBA AMERICA INFORMATION SYSTEMS, INC., and
TOSHIBA AMERICA, INC.

Defendants-Appellees,

and

BUY.COM, INC.,

Defendant-Appellee,

and

B AND H FOTO AND ELECTRONICS CORP.,

Defendant-Appellee,

and

LEAF IMAGING, LTD. (doing business as Mamiyaleaf)
and MAMIYA AMERICA CORPORATION,

Defendants-Appellees,

and

LEICA CAMERA AG AND LEICA CAMERA, INC.,

Defendants-Appellees,

and

FUJIFILM CORPORATION, SIGMA CORPORATION,
SIGMA CORPORATION OF AMERICA, MICRO ELECTRONICS, INC.
(doing business as Micro Center), PENTAX RICOH IMAGING CO., LTD.,
PENTAX RICOH IMAGING AMERICAS CORPORATION,
RICOH COMPANY, LTD., RICOH AMERICAS CORPORATION,
and KONICA MINOLTA BUSINESS SOLUTIONS USA, INC.,

Defendants-Appellees,

and

ASUS COMPUTER INTERNATIONAL
and ASUSTEK COMPUTER, INC.,

Defendants-Appellees,

and

CDW LLC,

Defendant-Appellee,

and

VICTOR HASSELBLAD AB and HASSELBLAD USA, INC.,

Defendants-Appellees,

and

MAMIYA DIGITAL IMAGING CO., LTD.

Appeals from the United States District Court for the Central District of California
in consolidated case no. 12-CV-1324, Judge Otis D. Wright, II

**CORRECTED JOINT APPELLEES' BRIEF**

Mark A. Lemley
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA 94111
(415) 362-6666

*Attorney for Defendants-Appellees
ELECTRONICS FOR IMAGING, INC.,
SAKAR INTERNATIONAL, INC. (doing
business as Vivitar), GENERAL
IMAGING COMPANY,
OVERSTOCK.COM, INC., NEWEGG,
INC. and NEWEGG.COM, INC.,
XEROX CORPORATION, TOSHIBA
CORPORATION, TOSHIBA AMERICA
BUSINESS SOLUTIONS, INC.,
TOSHIBA AMERICA INFORMATION
SYSTEMS, INC. and TOSHIBA
AMERICA, INC.*

Anthony S. Gabrielson
Tiffany D. Gehrke
MARSHALL, GERSTEIN
& BORUN LLP
233 South Wacker Drive,
6300 Willis Tower
(312) 474-6300

*Attorneys for Defendant-Appellee
CDW LLC*

Gregory S. Tamkin
Case Collard
DORSEY & WHITNEY LLP
1400 Wewatta St., Suite 400
Denver, CO 80202
(303) 629-3400

*Attorneys for Defendant-Appellee
BUY.COM, INC.*

Paul T. Meiklejohn
Mudit Kakar
DORSEY & WHITNEY, LLP
701 Fifth Avenue, Suite 6100
Seattle, WA 98104
(206) 903-8800

*Attorneys for TOSHIBA CORPORATION,
TOSHIBA AMERICA BUSINESS
SOLUTIONS, INC., TOSHIBA AMERICA
INFORMATION SYSTEMS, INC. and
TOSHIBA AMERICA, INC.*

William C. Rooklidge
Frank P. Coté
Mark L. Blake
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612.4408
(949) 851-3939

*Attorneys for Defendant-Appellee
ELECTRONICS FOR IMAGING, INC.*

Ezra Sutton
EZRA SUTTON & ASSOCIATES, P.A.
900 Route 9 North
Woodbridge, New Jersey 07095
(732) 634-3520

*Attorney for Defendant-Appellee SAKAR
INTERNATIONAL, INC.*

Aaron Stiefel
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
(212) 836-8442

*Attorney for Defendant-Appellee
B AND H FOTO AND ELECTRONICS
CORP.*

Michael H. Jacobs
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20009
(202) 624-2500

*Attorneys for Defendant-Appellee*
*LEICA CAMERA AG and LEICA*
*CAMERA, INC.*

Steven J. Routh
Sten Jensen
John R. Inge
ORRICK, HERRINGTON &
SUTCLIFFE LLP
1152 15th Street, NW
Washington, D.C. 20005-1706
(202) 339-8400

Christopher P. Broderick
William H. Wright
ORRICK, HERRINGTON &
SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017-5855
(213) 629-2020

*Attorneys for Defendants-Appellees*
*FUJIFILM CORPORATION, SIGMA*
*CORPORATION, SIGMA*
*CORPORATION OF AMERICA,*
*MICRO ELECTRONICS, INC., PENTAX*
*RICOH IMAGING CO., LTD., PENTAX*
*RICOH IMAGING AMERICAS*
*CORPORATION, RICOH COMPANY,*
*LTD., RICOH AMERICAS*
*CORPORATION, and KONICA*
*MINOLTA BUSINESS SOLUTIONS*
*USA, INC.*

J. Rick Taché
GREENBERG TRAURIG, LLP
3161 Michelson Drive, Suite 1000
Irvine, CA 92612
(949) 732-6500

*Attorney for Defendant-Appellee*
*LEAF IMAGING, LTD. (doing business as*
*Mamiyaleaf), and MAMIYA AMERICA*
*CORPORATION, MAMIYA DIGITAL*
*IMAGING CO., LTD.*

Joshua M. Masur
Zhuanjia Gu
TURNER BOYD LLP
2570 West El Camino Real
Suite 380
Mountain View, California 94040
(650) 521-5935

*Attorneys for Defendants-Appellees*
*ASUS COMPUTER INTERNATIONAL,*
*and ASUSTEK COMPUTER, INC.*

Mark C. Johnson
Kyle B. Fleming
Nicholas J. Gingo
RENNER, OTTO, BOISSELLE &
SKLAR, LLP
1621 Euclid Avenue, 19th Floor
Cleveland, Ohio 44115
(216) 621-1113

*Attorneys for Defendant-Appellee*
*VICTOR HASSELBLAD AB and*
*HASSELBLAD USA, INC.*

December 19, 2013

# CERTIFICATE OF INTEREST

Pursuant to Federal Rule of Appellate Procedure 26.1 and Federal Circuit Rule 47.4, the undersigned counsel for Defendant-Appellees Electronics For Imaging, Inc.; Sakar International, Inc. (doing business as Vivitar); General Imaging Company; Overstock.com, Inc.; Newegg, Inc. and Newegg.com, Inc.; Xerox Corporation; Toshiba Corporation; Toshiba America Business Solutions, Inc.; Toshiba America Information Systems, Inc., and Toshiba America, Inc. hereby certifies that:

1.   The full names of every party or amicus represented by me is:

ELECTRONICS FOR IMAGING, INC.,

SAKAR INTERNATIONAL, INC. (doing business as Vivitar),

GENERAL IMAGING COMPANY,

OVERSTOCK.COM, INC.,

NEWEGG, INC. and NEWEGG.COM, INC.,

XEROX CORPORATION,

TOSHIBA CORPORATION, TOSHIBA AMERICA BUSINESS SOLUTIONS, INC., TOSHIBA AMERICA INFORMATION SYSTEMS, INC., and TOSHIBA AMERICA, INC.

2.   The names of the real parties in interest (if the party named in the caption is not the real party in interest) represented by me is:

ELECTRONICS FOR IMAGING, INC. – N/A

SAKAR INTERNATIONAL, INC. (doing business as Vivitar) – N/A

GENERAL IMAGING COMPANY – N/A

OVERSTOCK.COM, INC. – N/A

NEWEGG, INC. AND NEWEGG.COM, INC. – Newegg.com Inc. was merged into Newegg Inc. on September 8, 2009 and, therefore, no longer exists as a separate entity.

XEROX CORPORATION – N/A

TOSHIBA CORPORATION, TOSHIBA AMERICA BUSINESS SOLUTIONS, INC., TOSHIBA AMERICA INFORMATION SYSTEMS, INC. and TOSHIBA AMERICA, INC. – N/A

3.  All parent corporations and any publicly held companies that own 10% or

more of the stock of the party or amicus represented by me are:

ELECTRONICS FOR IMAGING, INC. – N/A

SAKAR INTERNATIONAL, INC. (doing business as Vivitar) – None

GENERAL IMAGING COMPANY – None

OVERSTOCK.COM, INC. – N/A

NEWEGG, INC. AND NEWEGG.COM, INC. – None

XEROX CORPORATION – N/A

TOSHIBA CORPORATION – Toshiba Corporation has no parent corporation.  No publicly held corporation, individual or other person owns ten percent (10%) or more of Toshiba Corporation's stock.

TOSHIBA AMERICA BUSINESS SOLUTIONS, INC. – The parent corporations of Toshiba America Business Solutions, Inc. are Toshiba America Information Systems, Inc. and Toshiba Corporation (publicly held in Japan).  Each owns more than 10% of the stock of Toshiba America Business Solutions, Inc.

TOSHIBA AMERICA INFORMATION SYSTEMS, INC. – Toshiba America, Inc. owns 100% of the stock of Toshiba America Information Systems, Inc.  No publicly held corporation owns 10% or more of Toshiba America Information Systems, Inc.'s stock.

TOSHIBA AMERICA, INC. – The parent corporation of Toshiba America, Inc. is Toshiba Corporation.  Toshiba Corporation owns more than 10% of the stock of Toshiba America, Inc.

4. The names of all law firms and the partners or associates that appeared for any of the parties represented by me in the District Court or are expected to appear in this Court are:

ELECTRONICS FOR IMAGING, INC. – Jones Day:  William C. Rooklidge, Frank P. Cote, Mark L. Blake, Michelle Stover; Durie Tangri LLP:  Mark A. Lemley

SAKAR INTERNATIONAL, INC. (doing business as Vivitar) – Ezra Sutton, P.A.:  Ezra Sutton; Durie Tangri LLP:  Mark A. Lemley

GENERAL IMAGING COMPANY – Turner Boyd LLP:  Joshua M. Masur; Zhuanjia Gu; Knobbe, Martens, Olson & Bear LLP:  Jon W. Gurka, Reza Mirzaie, Damien Howard; Durie Tangri LLP:  Mark A. Lemley

OVERSTOCK.COM, INC. – Orrick, Herrington & Sutcliffe LLP: Steven J. Routh, Christopher P. Broderick, John R. Inge, Sten A. Jensen, William H. Wright; Durie Tangri LLP:  Mark A. Lemley

NEWEGG, INC. AND NEWEGG.COM, INC. – The Webb Law Firm: Kent E. Baldauf, Jr., Cecilia Rose Dickson; Durie Tangri LLP:  Mark A. Lemley

XEROX CORPORATION – Ballard Spahr LLP:  Katrina M. Quicker, Jason P. Grier, Michael J. Riesen; Durie Tangri LLP:  Mark A. Lemley

TOSHIBA CORPORATION, TOSHIBA AMERICA BUSINESS
SOLUTIONS, INC., TOSHIBA AMERICA INFORMATION
SYSTEMS, INC. and TOSHIBA AMERICA, INC. – Dorsey & Whitney,
LLP:  Paul T. Meiklejohn and Mudit Kakar; Durie Tangri LLP:  Mark A.
Lemley

DATED:  December 19, 2013          DURIE TANGRI LLP

By:  _____/s/ Mark A. Lemley*_____
                        Mark A. Lemley

*Attorney for Defendants-Appellees
Electronics For Imaging, Inc.; Sakar
International, Inc. (doing business as
Vivitar); General Imaging Company;
Overstock.com, Inc.; Newegg, Inc. and
Newegg.com, Inc.; Xerox Corporation;
Toshiba Corporation; Toshiba America
Business Solutions, Inc.; Toshiba
America Information Systems, Inc., and
Toshiba America, Inc.*

*  Mark A. Lemley consented to the use
of his electronic signature herein.

# CERTIFICATE OF INTEREST

Pursuant to Federal Rule of Appellate Procedure 26.1 and Federal Circuit Rule 47.4, the undersigned counsel for Defendant-Appellee hereby certifies that:

1.  The full names of every party or amicus represented by me is:

    BUY.COM, INC.

2.  The names of the real parties in interest (if the party named in the caption is not the real party in interest) represented by me is:

    None.

3.  All parent corporations and any publicly held companies that own 10% or more of the stock of the party or amicus represented by me are:

    Buy.com, Inc., is a wholly owned subsidiary of Rakuten USA, Inc. which is a wholly owned subsidiary of Rakuten, Inc. which is a publicly traded Japanese corporation.

4.  The names of all law firms and the partners or associates that appeared for any of the parties represented by me in the District Court or are expected to appear in this Court are:

    DORSEY & WHITNEY LLP

    Gregory S. Tamkin

    Case Collard

DATED:  December 19, 2013          DORSEY & WHITNEY LLP

By:  _____*/s/Gregory S. Tamkin*_____

Gregory S. Tamkin

*Attorney for Defendant-Appellee Buy.com, Inc.*

\* Gregory S. Tamkin consented to the use of his electronic signature herein.

## CERTIFICATE OF INTEREST

Pursuant to Federal Rule of Appellate Procedure 26.1 and Federal Circuit Rule 47.4, the undersigned counsel for Defendant-Appellee hereby certifies that:

1.  The full names of every party or amicus represented by me is:

    B&H FOTO AND ELECTRONICS CORP.

2.  The names of the real parties in interest (if the party named in the caption is not the real party in interest) represented by me is:

    None

3.  All parent corporations and any publicly held companies that own 10% or more of the stock of the party or amicus represented by me are:

    None

4.  The names of all law firms and the partners or associates that appeared for any of the parties represented by me in the District Court or are expected to appear in this Court are:

    KAYE SCHOLER LLP
    Aaron Stiefel
    David Harris
    Rhonda R. Trotter
    Oscar Ramallo

KAYE SCHOLER LLP

DATED:  December 19, 2013

By:  _____ */s/ Aaron Stiefel\**  _____

Aaron Stiefel

*Attorney for Defendant-Appellee B&H Foto & Electronics Corp.*

\*  Aaron Stiefel consented to the use of his electronic signature herein.

**CERTIFICATE OF INTEREST**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Federal Circuit Rule 47.4, the undersigned counsel for Defendant-Appellees hereby certifies that:

1.  The full names of every party or amicus represented by me is:

    LEAF IMAGING, LTD. (doing business as Mamiyaleaf), and MAMIYA AMERICA CORPORATION, MAMIYA DIGITAL IMAGING CO., LTD.

2.  The names of the real parties in interest (if the party named in the caption is not the real party in interest) represented by me is:

    None.

3.  All parent corporations and any publicly held companies that own 10% or more of the stock of the party or amicus represented by me are:

    None.

4.  The names of all law firms and the partners or associates that appeared for any of the parties represented by me in the District Court or are expected to appear in this Court are:

    Greenberg Traurig, LLP: J. Rick Taché, Richard D. Harris, Jenny S. Kim, Erikson C. Squier, J. Blake Cunningham.

DATED: December 19, 2013            GREENBERG TRAURIG, LLP

By: _____*/s/J. Rick Taché*_____

J. Rick Taché

*Attorney for Defendants-Appellees Leaf Imaging, Ltd. (doing business as Mamiyaleaf),and Mamiya America Corporation, Mamiya Digital Imaging Co., Ltd.*

\* *J. Rick Taché* consented to the use of his electronic signature herein.

# CERTIFICATE OF INTEREST

Pursuant to Federal Rule of Appellate Procedure 26.1 and Federal Circuit Rule 47.4, the undersigned counsel for Defendant-Appellees hereby certifies that:

1.  The full names of every party or amicus represented by me is:

    LEICA CAMERA AG and LEICA CAMERA, INC.

2.  The names of the real parties in interest (if the party named in the caption is not the real party in interest) represented by me is:

    None.

3.  All parent corporations and any publicly held companies that own 10% or more of the stock of the party or amicus represented by me are:

    Lisa Germany Holding GmbH

4.  The names of all law firms and the partners or associates that appeared for any of the parties represented by me in the District Court or are expected to appear in this Court are:

    Crowell & Moring LLP, Michael H. Jacobs

DATED:  December 19, 2013             CROWELL & MORING LLP

                               By:    ___*/s/ Michael H. Jacobs*___
                                      Michael H. Jacobs

                                      *Attorney for Defendants-Appellees Leica Camera AG and Leica Camera, Inc.*

                                      *  Michael H. Jacobs consented to the use of his electronic signature herein.

**CERTIFICATE OF INTEREST**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Federal Circuit

Rule 47.4, the undersigned counsel for Defendant-Appellees hereby certifies that:

1.  The full names of every party or amicus represented by me is:

> FUJIFILM CORPORATION,
>
> SIGMA CORPORATION, SIGMA CORPORATION OF AMERICA,
>
> MICRO ELECTRONICS, INC.,
>
> PENTAX RICOH IMAGING CO., LTD., PENTAX RICOH IMAGING
> AMERICAS CORPORATION, RICOH COMPANY, LTD., RICOH
> AMERICAS CORPORATION, and KONICA MINOLTA BUSINESS
> SOLUTIONS USA, INC.

2.  The names of the real parties in interest (if the party named in the caption is

> not the real party in interest) represented by me is:

> None.

3.  All parent corporations and any publicly held companies that own 10% or

> more of the stock of the party or amicus represented by me are:

> None.

4.  The names of all law firms and the partners or associates that appeared for

> any of the parties represented by me in the District Court or are expected to

> appear in this Court are:

ORRICK, HERRINGTON & SUTCLIFFE LLP

Steven J. Routh, Sten Jensen, John R. Inge, Christopher P. Broderick,

William H. Wright, Andrew Y. Yen and David E. Case.


DATED: December 19, 2013          ORRICK, HERRINGTON & SUTCLIFFE LLP

By:  _____*/s/ Steven J. Routh*_____
                        Steven J. Routh

*Attorney for Defendants-Appellees*
*FUJIFILM Corporation, Sigma*
*Corporation, Sigma Corporation of*
*America, Micro Electronics, Inc., Pentax*
*Ricoh Imaging Co., Ltd., Pentax Ricoh*
*Imaging Americas Corporation, Ricoh*
*Company, Ltd., Ricoh Americas*
*Corporation, and Konica Minolta*
*Business Solutions USA, Inc.*

## CERTIFICATE OF INTEREST

Pursuant to Federal Rule of Appellate Procedure 26.1 and Federal Circuit Rule 47.4, the undersigned counsel for Defendant-Appellees hereby certifies that:

1.  The full names of every party or amicus represented by me is:

    ASUS COMPUTER INTERNATIONAL, and ASUSTEK COMPUTER, INC.

2.  The names of the real parties in interest (if the party named in the caption is not the real party in interest) represented by me is:

    None.

3.  All parent corporations and any publicly held companies that own 10% or more of the stock of the party or amicus represented by me are:

    ASUSTeK Computer Inc. is a publicly traded Taiwanese company that has no parent corporation. ASUSTeK Computer Inc. owns 100% of the shares of ASUS Computer International.

4.  The names of all law firms and the partners or associates that appeared for any of the parties represented by me in the District Court or are expected to appear in this Court are:

    Joshua M. Masur and Zhuanjia Gu of Turner Boyd LLP.

DATED: December 19, 2013              TURNER BOYD LLP

By: _____*/s/Joshua M. Masur*_____
                  Joshua M. Masur

*Attorney for Defendant-Appellee*
*ASUSTeK Computer, Inc.*

\* Joshua M. Masur consented to the use of his electronic signature herein.

## CERTIFICATE OF INTEREST

Pursuant to Federal Rule of Appellate Procedure 26.1 and Federal Circuit

Rule 47.4, the undersigned counsel for Defendant-Appellee hereby certifies that:

1. The full names of every party or amicus represented by me is:

   CDW LLC

2. The names of the real parties in interest (if the party named in the caption is

   not the real party in interest) represented by me is:

   None.

3. All parent corporations and any publicly held companies that own 10% or

   more of the stock of the party or amicus represented by me are:

   CDW Corporation.

4. The names of all law firms and the partners or associates that appeared for

   any of the parties represented by me in the District Court or are expected to

   appear in this Court are:

   Marshall, Gerstein & Borun LLP; Anthony S. Gabrielson and
   Tiffany D. Gehrke.

DATED: December 18, 2013          MARSHALL, GERSTEIN & BORUN
                                  LLP

                          By:  _____/s/ *Anthony S. Gabrielson**_____

                                  Anthony S. Gabrielson
                                  *Attorney for Defendant-Appellee*
                                  *CDW LLC*

                                  *  Anthony S. Gabrielson consented to
                                  the use of his electronic signature herein.

# CERTIFICATE OF INTEREST

Pursuant to Federal Rule of Appellate Procedure 26.1 and Federal Circuit Rule 47.4, the undersigned counsel for Defendant-Appellee hereby certifies that:

1. The full names of every party or amicus represented by me is:

    VICTOR HASSELBLAD AB and HASSELBLAD USA, INC.

2. The names of the real parties in interest (if the party named in the caption is not the real party in interest) represented by me is:

    None.

3. All parent corporations and any publicly held companies that own 10% or more of the stock of the party or amicus represented by me are:

    None.

4. The names of all law firms and the partners or associates that appeared for any of the parties represented by me in the District Court or are expected to appear in this Court are:

RENNER, OTTO, BOISSELLE & SKLAR, LLP

Mark C. Johnson, Kyle B. Fleming and Nicholas J. Gingo

DATED:  December 19, 2013          RENNER, OTTO, BOISSELLE &
                                   SKLAR, LLP

By:  _____/s/ Mark C. Johnson*_____
                    Mark C. Johnson

*Attorney for Defendants-Appellees
Victor Hasselblad AB and Hasselblad
USA, Inc.*

\*  Mark C. Johnson consented to the use
of his electronic signature herein.

# TABLE OF CONTENTS

**Page**

STATEMENT OF RELATED CASES ............................................................ vi

STATEMENT OF THE ISSUES ....................................................................1

INTRODUCTION .........................................................................................2

STATEMENT OF FACTS .............................................................................3

      A.    The '415 Patent And Background Of The Technology ............3

      B.    The Asserted Claims .................................................................6

SUMMARY OF ARGUMENT .......................................................................9

ARGUMENT ...............................................................................................10

I.      GOVERNING LEGAL STANDARD ............................................10

II.    DIGITECH HAS WAIVED THE CLAIM CONSTRUCTION
      ARGUMENT ON WHICH IT APPEARS TO RELY MOST
      HEAVILY BEFORE THIS COURT ...............................................11

III.   THE DEVICE PROFILE CLAIMS ARE INVALID UNDER
      35 U.S.C. § 101 BECAUSE THEY ARE NOT WITHIN A
      CATEGORY OF PATENTABLE SUBJECT MATTER ................12

      A.    A Device Profile Is Not a Process, Machine,
            Manufacture, or Composition of Matter .................................12

      B.    Data Is Not Patent-eligible .....................................................18

IV.   THE '415 PATENT METHOD CLAIMS ARE
      UNPATENTABLY ABSTRACT BECAUSE THEY CLAIM
      ONLY A METHOD FOR GENERATING DATA ..........................21

      A.    Digitech's Method Claims Are Unpatentable Because
            They Are Not Limited to Computers at All, Much Less
            Specific Computers .................................................................21

      B.    Digitech's Method Claims Fail the Machine-or-
            Transformation Test .................................................................30

            1.    Digitech's Claims Are Not Tied to a Specific
                  Machine .......................................................................30

            2.    Digitech's Claims Do Not Transform an Article to
                  Another State or Thing ................................................32

**TABLE OF CONTENTS**
(continued)

**Page**

C.    Digitech's Device Profile Claims Are Also Unpatentably
      Abstract ...................................................................................35

D.    Digitech's Arguments Are Likely to Preempt a Wide
      Array of Applications ...........................................................38

CONCLUSION ...............................................................................39

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Abele*,
  684 F.2d 902 (C.C.P.A. 1982)..................................................................*passim*

*Accenture Global Services GmbH v. Guidewire Software, Inc.*,
  728 F.3d 1336 (Fed. Cir. 2013)..................................................... 21, 27, 29, 37

*Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*,
  607 F.3d 817 (Fed. Cir. 2010)..........................................................................22

*AquaTex Indus. v. Techniche Solutions*,
  479 F.3d 1320 (Fed. Cir. 2007)........................................................................35

*Bancorp Services, L.L.C. v. Sun Life Assurance Co. of Canada*,
  687 F.3d 1266 (Fed. Cir. 2012).......................................................................10

*Bayer AG v. Housey Pharm., Inc.*,
  340 F.3d 1367 (Fed. Cir. 2003).......................................................................15

*In re Bilski*,
  545 F.3d 943 (Fed. Cir. 2008),
  *aff'd sub nom. Bilski v. Kappos*, 130 S. Ct. 3218 (2010) ..........................*passim*

*Bilski v. Kappos*,
  130 S. Ct. 3218 (2010).............................................................................13, 25

*Clock Spring, L.P. v. Wrapmaster, Inc.*,
  560 F.3d 1317 (Fed. Cir. 2009).......................................................................35

*CLS Bank Int'l v. Alice Corp.*,
  685 F.3d 1341 (Fed. Cir. 2012),
  *rev'd on other grounds*, 717 F.3d 1269 (Fed. Cir. 2013) (en banc) ...........10, 36

*CLS Bank Int'l v. Alice Corp.*,
  717 F.3d 1269 (Fed. Cir. 2013) (en banc) (plurality opinion),
  *cert. granted*, __ S.Ct. __ (Dec. 6, 2013)....................................... 12, 26, 36, 37

*In re Comiskey,*
   554 F.3d 967 (Fed.Cir. 2009)..........................................................................34

*CyberSource Corp. v. Retail Decisions, Inc.,*
   654 F.3d 1366 (Fed. Cir. 2011)...............................................................22, 30

*Dealertrack, Inc. v. Huber,*
   674 F.3d 1315 (Fed. Cir. 2012)........................................................21, 26, 27

*Diamond v. Chakrabarty,*
   447 U.S. 303 (1980).......................................................................................15

*In re Ferguson,*
   558 F.3d 1359 (Fed. Cir. 2009)......................................................................13

*Fort Properties, Inc. v. Am. Master Lease LLC,*
   671 F.3d 1317 (Fed. Cir. 2012)........................................................21, 22, 27

*Gottschalk v. Benson,*
   409 U.S. 63 (1972)............................................................... 16, 21, 27, 31

*Markman v. Westview Instruments, Inc.,*
   517 U.S. 370 (1996).......................................................................................21

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.,*
   132 S. Ct. 1289 (2012)................................................................ 13, 26, 30, 37

*In re Nuijten,*
   500 F.3d 1346 (Fed. Cir. 2007)..................................................... 13, 14, 15, 16

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.,*
   521 F.3d 1351 (Fed. Cir. 2008)......................................................................21

*Parker v. Flook,*
   437 U.S. 584 (1978).......................................................................... 10, 21, 32

*Phillips v. AWH Corp.,*
   415 F.3d 1303 (Fed. Cir. 2005) (en banc) ......................................................18

*Regents of the Univ. of Minnesota v. AGA Medical Corp.,*
   717 F.3d 929 (Fed. Cir. 2013)........................................................................12

*Research Corporation Technologies, Inc. v. Microsoft Corp.*,
  627 F.3d 859 (Fed. Cir. 2010) ........................................................................28

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,
  242 F.3d 1337 (Fed. Cir. 2001) ......................................................................24

*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
  601 F.3d 1319 (Fed. Cir. 2010) ......................................................................10

*Ultramercial, Inc. v. Hulu, LLC*,
  722 F.3d 1335 (Fed. Cir. 2013) ................................................................20, 28

*In re Warmerdam*,
  33 F.3d 1354 (Fed. Cir. 1994) ........................................................................19

**Federal Statutes**

35 U.S.C. § 101 ...........................................................................*passim*

## **STATEMENT OF RELATED CASES**

There have been no other appeals before this or any other appellate court arising from the civil action that gave rise to this appeal.

## **STATEMENT OF THE ISSUES**

1.      Did the district court correctly rule that a "device profile" composed entirely of data is not a machine, manufacture, or composition of matter?

2.      Did the district court correctly rule that a method of generating a device profile by combining two pieces of data together is impermissibly abstract and therefore unpatentable?

## **INTRODUCTION**

The district court correctly found that the asserted claims of the sole patent in suit, U.S. Patent No. 6,128,415 ("the '415 patent"), do not cover patentable subject matter for two reasons: (1) the device profile claims do not fit into any of the four categories of patentable subject matter; and (2) the method claims are directed to unpatentable abstract ideas. Digitech's Brief raises *nineteen* separate arguments for this Court's consideration. Yet despite such a "kitchen sink" approach to challenging the well-reasoned decision below, Digitech's brief notably omits: (1) any reference to three of this Court's most recent decisions on patentable subject matter; and (2) any detailed discussion of the language of the asserted claims.[1]

Those omissions are not accidental. A review of the claim language (rather than the specification excerpts selectively relied on by Digitech), in light of this Court's controlling precedents, makes clear that none of the asserted claims are directed to patentable subject matter. The claims to a "device profile" are directed to data, pure and simple, and not to a patentable process, machine, article of manufacture, or composition of matter. And the method claims claim nothing more than generating data from other data. Accordingly, the district court's grant of summary judgment should be affirmed.

---

[1] Digitech's Brief references the actual language of only two of the 19 asserted claims, claims 10 and 26. Digitech Br. at 27, 41.

### STATEMENT OF FACTS

**A.    The '415 Patent And Background Of The Technology**

The '415 patent relates to data used to describe certain aspects of digital image processing systems. JA743. Digital image processing systems are included in devices such as cameras and scanners that capture digital images as well as in printers and monitors that reproduce digital images. JA62, 1:20-23.

According to the patent, all such devices introduce distortions because of their physical limitations. JA62, 1:32-34. Distortions can occur in the color of the image or in the spatial characteristics of the image (spatial characteristics include image position or dimension). JA787-788. Digital zoom is an example of a device operation that may affect spatial characteristics. JA788.

A device profile is data – a set of numbers – that describes the color and spatial characteristics of a digital image processing device. JA3–4; JA62, 1:8–11; JA63, 1:32–34, JA8. As discussed further below, color characteristics of a device can be represented by "image pixel data (digits) in a device independent color space." JA62, 1:55–2:3, JA8. Spatial characteristics of a device can be represented by data in the form of mathematical functions. JA63, 3:12–31, JA8. Spatial characteristics can be described, for example, by image density measurements taken with a microdensitometer. JA793. Such measurements are taken, and a device profile is generated, in a calibration procedure during the

- 3 -

manufacturing process. JA62, 1:36-40. Such a collection of data representing the color characteristics and spatial characteristics of a device constitutes the "device profile" of the patent.

The color characteristics ("COLOR CHAR. INFO," items 14 and 22) and spatial characteristics ("SPATIAL CHAR. INFO," items 12 and 20) of the device profile are shown below in Figure 1 of the patent. JA62, 2:36-37. Figure 1 "is a block diagram of a basic digital image processing system according to the invention." *Id.* The digital image processing system includes digital image devices such as a source device 2, an image processor 4, and a destination device 6.



## FIG. 1

The device profile "accompanies the digital imaging device" (JA62, 1:64-2:1), it does not accompany each digital image, as Digitech's brief inaccurately asserts. JA8. The digital image processing system uses the device profile to more accurately capture, transform, or render a digital image by minimizing color and spatial distortions produced by a digital imaging device. JA3-4; JA62, 1:8–1, 1:32–34, JA8.

Device profiles were well known in the art before the application for the '415 patent was filed.  JA64, 5:10-15; JA743.  Prior art also disclosed the use of device profiles to correct color and spatial distortions (JA4; JA743), and to correct color distortions in device-independent color spaces.  JA4; JA743-744.

Prior to the filing date of the patent, the International Color Consortium (ICC) had established a standard that used a device profile for storing color characteristics.  JA64, 5:10-15; see JA841-94 (ICC Profile Specification in prosecution history).  The patent's preferred embodiment incorporated spatial data in the form of spatial characteristic functions into the existing ICC profile.

> In the present invention, spatial characteristic functions are incorporated into device profiles.  These spatial characteristic functions have been coded as private tags attachable to the well known International Color Consortium (ICC) profile format… [JA64, 5:10-15]

The applicants' only asserted point of novelty was using device profiles consisting of data to correct spatial distortions in device-independent color spaces: "It is Applicant's belief that Applicant is the first to provide a <u>device profile</u> *comprising data* for describing spatial information of a device in the profile in device independent space." (Underlining in original, italics added.)  JA743, JA4; JA62, 1:64–2:1, 2:4–9.

Thus, the claimed invention is nothing more than the addition of spatial measurement data to a well-known standardized format for storing color characteristics (*i.e.*, the ICC profile).

### B.    The Asserted Claims

The patent has four independent claims (1, 10, 18 and 26).  Digitech asserted three of those claims (1, 10 and 26), along with certain related dependent claims (2-6, 9, 11-15 and 27-31).  The asserted claims are directed to a "device profile" (1-6, 9, 26-31) or a method for "generating a device profile" (10-15).  Digitech did not assert independent claim 18 or its dependent claims (19-25).  The unasserted claims are the only ones directed to a "digital image processing system."

Asserted independent claims 1 and 26 and dependent claims 2-6, 9 and 27-31, respectively, are directed to a device profile consisting of data ("device-profile claims").  Claims 1 and 26 are set forth below:

> 1.    A device profile for describing properties of a device in a digital image reproduction system to capture, transform or render an image, said device profile comprising:
>
>> first data for describing a device dependent transformation of color information content of the image to a device independent color space; and
>>
>> second data for describing a device dependent transformation of spatial information content of the image in said device independent color space.
>
> 26.    A device profile for describing properties of a device in a digital image reproduction system to capture, transform or render an image, said device profile comprising data for describing a device dependent

- 6 -

transformation of spatial information content of the image to a device independent color space, wherein through use of spatial stimuli and device response for said device, said data is represented by spatial characteristic functions.

Asserted independent claim 10 and its dependent claims 11-15 are method claims directed to generating a device profile ("device-profile-generating claims.") Claim 10 is set forth below:

10.     A method of generating a device profile that describes properties of a device in a digital image reproduction system for capturing, transforming or rendering an image, said method comprising:

generating first data for describing a device dependent transformation of color information content of the image to a device independent color space through use of measured chromatic stimuli and device response characteristic functions;

generating second data for describing a device dependent transformation of spatial information content of the image in said device independent color space through use of spatial stimuli and device response characteristic functions; and

combining said first and second data into the device profile.

In contrast to the asserted claims, unasserted independent claim 18 and its dependent claims 19-25 are directed to a "digital image processing system" that uses a device profile ("digital-imaging-processing-system claims"). Claim 18 also uses "means for" language. Claim 18 is set forth below:

18. A digital image processing system using a device profile for describing properties of a device in the system to capture, transform or render an image, said system comprising:

means for utilizing first data of the device profile for describing a device dependent transformation of color information content of

the image to a device independent color space through use of chromatic response characteristic functions; and

means for utilizing second data of the device profile for describing a device dependent transformation of spatial information content of the image in said device independent color space through the use of spatial characteristic functions describing image spatial transform characteristics in said device independent color space.

The repetitive references (fifty-six in all) in Digitech's Brief to a "digital image processing system" can only refer to unasserted claims 18-25, not the asserted claims.  JA17.

## SUMMARY OF ARGUMENT

Most of the asserted claims are directed to a "device profile." A device profile is not a machine, a manufacture, a process, or a composition of matter. Rather, as the claims make clear, it is data pure and simple. The district court correctly held that the device profile claims were unpatentable because they did not fit within one of the four statutory categories of eligible subject matter in 35 U.S.C. § 101.

Claim 10 and its dependent claims are directed to a method of creating a device profile by generating two pieces of data and combining them. Those claims are not limited to any machine at all, much less a specific machine. The district court correctly held those claims unpatentable because they cover an abstract idea – the idea of creating a device profile by combining two sets of data, however implemented. Similarly, the device profile claims are also unpatentable because they are directed only to an abstract idea, rather than to a limited, real-world implementation of that idea.

## ARGUMENT

## I.    GOVERNING LEGAL STANDARD

"Whether a claim is drawn to patent-eligible subject matter under § 101 is a threshold inquiry" and "an issue of law." *In re Bilski*, 545 F.3d 943, 950, 951 (Fed. Cir. 2008), *aff'd sub nom. Bilski v. Kappos*, 130 S. Ct. 3218, 3225 (2010) (describing Section 101 as "a threshold test"); *Parker v. Flook*, 437 U.S. 584, 593 (1978) (inquiry under Section 101 "must precede the determination of whether [a] discovery is, in fact, new or obvious."); *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1331 (Fed. Cir. 2010) ("Whether a [patent] claim is drawn to patent-eligible subject matter is an issue of law").

For this reason, a district court has broad discretion as to the appropriate time to decide whether a patent claim satisfies the requirements of Section 101. *See CLS Bank Int'l v. Alice Corp.*, 685 F.3d 1341, 1348 (Fed. Cir. 2012), *rev'd on other grounds*, 717 F.3d 1269, 1282 (Fed. Cir. 2013) (en banc) ("[A] district court properly acts within its discretion in deciding when to address the diverse statutory challenges to validity" and may address Section 101 "before other matters touching the validity of patents[.]").

Among other things, this means that a court may appropriately decide the Section 101 issue prior to claim construction.  For example, in *Bancorp Services, L.L.C. v. Sun Life Assurance Co. of Canada*, 687 F.3d 1266, 1273 (Fed. Cir. 2012),

the Federal Circuit considered a case in which the district court "declined to construe numerous disputed terms prior to considering invalidity under § 101." This Court "perceive[d] no flaw" in the district court's approach to deciding the Section 101 issue first, and affirmed the district court's holding of invalidity. *Id.*

## II. DIGITECH HAS WAIVED THE CLAIM CONSTRUCTION ARGUMENT ON WHICH IT RELIES BEFORE THIS COURT

Digitech devotes much of its brief to arguing that the district court either failed to construe or misconstrued the term "device profile." Digitech Br. at 4-10, 15-20. But Digitech has waived that argument. The district court required that Defendants file a letter with the court requesting permission to file the summary judgment motion that is the basis for this appeal. JA977. Defendants did so. JA986-991. Digitech opposed Defendants' request to file and pursue a summary judgment motion, and in so doing, Digitech argued that it was inappropriate to consider such a motion without construing the claims, including the term "device profile." JA980. The district court granted Defendants leave to file their summary judgment motion, and it specifically required each party to include in its briefs on the motion any claim constructions they asserted were relevant to the motion:

> If the parties believe certain claim terms must be construed for this § 101 determination, they should assert their proposed constructions in their papers—no separate claim-construction briefs will be considered.

JA977.  Digitech did not identify or propose any claim constructions in opposing

Defendants' summary judgment motion.    JA232-260.    Accordingly, Digitech

waived any claim construction arguments it might have wished to assert before the

district court, and it cannot now raise such arguments before this Court.  *See, e.g.,*

*Regents of the Univ. of Minnesota v. AGA Medical Corp.*, 717 F.3d 929 (Fed. Cir.

2013).  As this Court has noted:

> If the [Plaintiff] objected to that construction, it should have presented
> its objection and its alternative construction to the district court. . . .
> The [Plaintiff] has therefore waived any objection to this aspect of the
> district court's construction, and cannot advance a new reading of the
> claim language indirectly on appeal.

*Id*. at 946.

## III.    THE DEVICE PROFILE CLAIMS DO NOT FALL WITHIN A CATEGORY OF PATENTABLE SUBJECT MATTER

### A.    A Device Profile Is Not A Process, Machine, Manufacture, Or Composition Of Matter

In determining whether an asserted claim of a patent claims eligible subject

matter, "[t]he first question is whether the claimed invention fits within one of the

four statutory classes set out in §101."  *CLS Bank Int'l v. Alice Corp*., 717 F.3d

1269, 1282 (Fed. Cir. 2013) (en banc) (plurality opinion), *cert. granted*, __ S.Ct.

__ (Dec. 6, 2013) ; *see also id*. at 1334 (Rader, C.J., additional views) ("When all

else fails, consult the statute").  If the asserted claims do not fall within one of

those categories, the claims are invalid.  Abstractness is addressed only as a second

- 12 -

analytical step, and only if it is first determined that the asserted claims fall within one of the four categories. The District Court correctly followed this two-step analytical approach to find that all of the asserted claims are directed to data or data gathering, which is not within one of the four patent eligible categories. JA3-18. Since the asserted device-profile claims do not satisfy even the first analytical step of 35 U.S.C. § 101, the claims are not patent eligible.

Section 101 requires that a claimed invention be a process, machine, manufacture, or composition of matter. *Bilski II*, 130 S. Ct. 3218, 3225 (2010). These four categories define the entire extent of patent eligible subject matter. If a claim is directed to subject matter outside the four statutory categories, that claim is not patent eligible even if the subject matter is otherwise new and useful. *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289, 1303-04 (2012); *In re Ferguson*, 558 F.3d 1359, 1365 (Fed. Cir. 2009); *In re Nuijten*, 500 F.3d 1346 (Fed. Cir. 2007). Because the device-profile claims of the '415 patent are not directed to any of the four allowable categories, they are not patent eligible.

A device profile is not a machine. The district court properly found that claim 1 and its dependent claims are not a machine under section 101 because a device profile is intangible and not directed to a "concrete thing." JA10; *In re Ferguson*, 558 F.3d at 1365 (quoting *In re Nuijten*, 500 F.3d at 1355). Intangible things may be "physical and real" and still not possess "concrete structure in the

- 13 -

sense implied" under section 101. *Nuijten*, 500 F.3d at 1355 (claim to a "propagated signal" containing data was not patent-eligible).

Digitech's Brief asserts that a device profile is "hardware or software within a digital image processing system" without setting forth any cogent position that a specific term or phrase in any of the asserted claims is or includes hardware or software. JA26. The unasserted claims, in contrast to the asserted claims, are specifically directed to a "digital image processing system," and may contain hardware and software components, including a processor, but the asserted claims do not.

Digitech's Brief also asserts that "digital images" and "tags to digital images" are "concrete things" but again Digitech provides no cogent argument that digital images or tags to digital images can be read into the asserted claims. *Id.* Moreover, even if the device profile consists of "tags" appended to a digital image, the asserted claims are still not patent eligible. A "tag" is widely recognized as nothing more than data—the cited and discussed prior art ICC profile repeatedly refers to a tag as "tag data." A8, A132, A845, A862-863, A869-870 and A933. Data appended to data is merely more data and more data is not patent eligible.

A device profile is not a manufacture. Likewise, the district court properly found that a device profile is not a manufacture since a manufacture must be tangible. JA10. A manufacture refers to articles resulting from processing

materials to give these materials new forms, qualities, properties, or combinations. *In re Nuijten*, 500 F.3d at 1356. It does not refer to data resulting from mathematically processing other data. Notably, the term "manufacture" as used in the statute is a noun. *Bayer AG v. Housey Pharm., Inc*., 340 F.3d 1367, 1373 (Fed. Cir. 2003). So, "manufacture" does not refer to the making or modifying of data, signals, or other intangible objects. *See Nuijten*, 500 F.3d at 1356–57. A device profile is just data. It is something intangible that cannot, as a matter of law, be considered a manufacture because it does not result from the processing of materials to give those materials a new form. The fact that a device profile is made of a color component and a spatial component does not qualify it as a manufacture—a combination of two intangible objects does not create a tangible one.

A device profile is not a composition of matter. The district court also properly found that a device profile is not a composition of matter. JA10. A composition of matter is defined as "all compositions of two or more substances and . . . all composite articles, whether they be the results of chemical union, or of mechanical mixture, or whether they be gases, fluids, powders or solids." *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980) (internal quotation marks omitted). Digitech contends that "stored data" is a composition of matter but fails

- 15 -

to provide any support for that position.[2]  Digitech Br. at 26.  *Nuijten* is directly to the contrary.  There, this Court held that "[a] signal comprising a fluctuation in electric potential or in electromagnetic fields is not a "chemical union," nor a gas, fluid, powder, or solid" and was therefore not a composition of matter.  *Nuijten*, 500 F.3d at 1357.  Data in the abstract is an electrical signal, not a gas, fluid, powder, or solid.  The key word in this category is "matter"—meaning that the claimed object must be tangible.  A device profile, no matter how it is comprised of different bits of data, cannot constitute matter.

A device profile is not a process.  Finally, the district court properly held that a device profile is not a process (JA11), and Digitech does not contest that holding in its Brief.  A process requires action; it is "an act, or a series of acts, performed upon the subject-matter to be transformed and reduced to a different state or thing."  *Gottschalk v. Benson*, 409 U.S. 63, 70 (1972) (internal quotation marks omitted).  The claimed device profile does not meet that definition.

Device-profile claim 26 similarly does not fall within one of the four statutory categories for the same reasons noted above with respect to claim 1. Claim 26 differs from claim 1 in that it only includes claim 1's "second data" for describing a device-dependent transformation of spatial-information content of an

---

[2]Digitech also fails to point to any storage limitation in the claims it asserts.

image to a device-independent color space. JA, A65, 7:8–13.[3] That is, it omits one of the two pieces of data that comprise the device profile in claim 1. Claim 26 also adds an additional limitation over claim 1 by specifying that the data is represented by spatial-characteristic functions through the "use of spatial stimuli and device response" for the device. JA, A65, 7:13–15. Claim 26's additional limitation refers to the calibration procedure to create the spatial data of the device profile. There is nothing in claim 26's additional limitation that would cause it to fit within one of the four statutory categories, and Digitech does not advance any argument that it does. Rather, Digitech takes the position that claim 26 stands or falls with claim 1. *See* Digitech Br. at 28 (arguing that claim 26 is patent-eligible for "the same reasons" as claim 1).

---

[3]Digitech's position that the district court improperly described claim 26 and its dependent claims as "product-by-process" claims is a red herring. Digitech's Br. 27-28, JA11. Digitech's "product by process" argument proceeds from its assertion that "the District Court correctly recognized [claim 1] as an apparatus claim." Digitech Br. at 29. But the district court did no such thing. To the contrary, it specifically held that claim 1 was not directed to a machine or system at all, and indeed Digitech spends most of the rest of its brief challenging that conclusion.

Even were Digitech correct that the district court had improperly read process limitations into the device profile claims, that argument could not possibly help it. The district court properly held that the claims are directed to data, and whether or not the claims describe a process for creating that data does not impact the Section 101 analysis. A claim directed to nothing more than data is unpatentable. Reading out the process limitations, as Digitech urges, Digitech Br. at 27-28, would make these claims even less like patentable subject matter, not more. Digitech effectively concedes this point by failing to advance any argument that the district court's "product-by process" description has any impact on the Section 101 analysis.

### B.   Data Is Not Patent-eligible.

As is evident from the plain language of the claims, the device-profile claims are directed to a "device profile" comprised of data and nothing more.  The "device profile" of claim 1 comprises "first data" and "second data," while the device profile of claim 26 comprises a single piece of data.  The device profile claims recite no structure—no processor, no computer, no input or output device, no controller, etc.  Thus, by the clear language of the claims, the "device profile" comprises data.  Because data is not a patent eligible subject matter under Section 101, all of the asserted claims are invalid for reciting patent ineligible subject matter.

Claim 10 confirms that a device profile is merely data, not a machine.  That claim is directed to a method for generating a device profile.  That method comprises generating first data, generating second data, and "combining said first and second data into the device profile."  It is well-established that identical terms should be construed consistently throughout the claims.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc) ("Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims."). The fact that the claimed method for generating a device profile in claim 10 requires nothing more than generating two pieces of data and combining them makes it clear that

the device profile itself is data, not a machine.

That the device-profile claims are only directed to data is also evident from the inventors' explicit and repeated statements to the PTO. In February of 1999, the inventors told the PTO that "Applicant is the first to provide a device profile comprising data for describing spatial information…." JA743 (first emphasis in original.) In July of 1999, the inventors reaffirmed this by telling the PTO that the invention, not just the device profile, consists of data: "the present invention actually provides the data…" and "the present invention provides the actual data which the spatial algorithm requires for processing." JA763 and JA762, respectively.

Data alone is not patentable. *See In re Warmerdam*, 33 F.3d 1354, 1362–63 (Fed. Cir. 1994) (holding that a "data structure" relating to a hierarchy of bubbles was patent ineligible because it only referred to the manipulation of ineligible, purely mathematical ideas). *In re Abele*, 684 F.2d 902 (C.C.P.A. 1982), confirms that the device-profile claims are unpatentable. In *Abele*, this Court's predecessor affirmed a section 101 rejection for claims directed to "displaying data" as a "picture" (claim 5) and an "apparatus for displaying data" as a "picture." (claim 7). *Id.* at 908. The claims rejected in *Abele* are far more concrete and tangible than a device profile. First, claim 5 in *Abele* is directed to displaying data as a picture. The device profile here is used to improve the accuracy of a picture but the data is

not displayed as a picture.  JA62, 1:6-11.  A picture is closer to being concrete and tangible than this patent's device profile.  *Abele* confirms that even if the data of the device profile constituted a picture that would not make it patent eligible.  Further, claim 7 in *Abele* explicitly recited a tangible and concrete "apparatus," and *Abele* still rejected it as patent ineligible under section 101.  The device profile claims, by contrast, recite no apparatus or other tangible and concrete structure.

Dependent claims 2-6, 9 and 27-31, the asserted claims dependent upon claims 1 and 26, stand or fall with claims 1 and 26.  Digitech's Brief concedes this point; it advances no argument that these dependent claims are situated differently than their independent claims, instead relying on "the same reasons" it believes claim 1 is patentable.  Digitech Br. at 29-30.  Since these dependent claims add no structure that would bring them within the confines of Section 101, they too must be found invalid.

Digitech tries to avoid this result by asserting that section 101 requires resolution of factual issues and that summary judgment is inappropriate because it submitted an expert declaration making factual assertions.  Digitech Br. at 15-17.  It is true that while patentable subject matter is a pure question of law, it will sometimes depend on subsidiary fact questions.  But the fact questions this Court has identified have to do with whether technology added to an abstract idea was in fact "routine" or "conventional."  *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335,

1339 (Fed. Cir. 2013).  Those questions are irrelevant to the issue with the device profile claims: whether they fall into one of the statutory categories at all.  In any event, the "facts" about which Digitech tries to concoct a dispute have nothing to do with whether technology was known in the art.  Rather, Dr. Cannizzo's declaration is directed to how he would construe the claims – an issue that, as noted above, Digitech waived in the district court by not offering a claim construction of device profile.  Claim construction, like patentable subject matter, is a question of law, not fact.  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996).  And it is the duty of the court, not the jury, to resolve any disputes over the scope of the claims.  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361-62 (Fed. Cir. 2008).  So the relief Digitech asks for – precluding summary judgment and sending the claim construction issues to jury trial – is simply not available to it.  Where, as here, the language of the claims and the context of the intrinsic record are clear, Digitech cannot manufacture a jury question by submitting a declaration in which an expert opines on how he would interpret the claims.

## IV.  THE '415 PATENT METHOD CLAIMS ARE UNPATENTABLY ABSTRACT BECAUSE THEY CLAIM ONLY A METHOD FOR GENERATING DATA

### A.  Digitech's Method Claims Are Unpatentable Because They Are Not Limited to Computers at All, Much Less Specific Computers

Through two rounds of briefing—its summary judgment opposition brief

below and its opening appeal brief filed in this Court—Digitech has avoided *any* mention of numerous Supreme Court and Federal Circuit cases on which Appellees principally relied in moving for summary judgment and on which the district court relied in its opinion. Digitech makes no mention of *Flook*, *Benson*, *Dealertrack*, *Fort Properties*, or *Accenture*. Digitech has therefore failed to give this Court *any* argument as to why these cases are not controlling.[4] But these cases are controlling, and they require affirmance.

This Court has repeatedly held that claims are impermissibly abstract if they can be performed entirely in the human mind or with a pencil and paper. As the Federal Circuit put it in *CyberSource*, the fact that "[a]ll of claim 3's method steps can be performed in the human mind, or by a human using a pen and paper" made it "clear" that the invention was directed to "unpatentable mental processes." *Cybersource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011); *accord Fort Properties, Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1322-23 (Fed. Cir. 2012) (an invention that can be processed using paper or other writing is insufficiently tied to the real world). There is nothing in claim 10 – the only independent claim written in method form – that requires that the data that makes up the device profile be stored on a computer. To the contrary, claim 10 makes no

---

[4] Nor should it be permitted to concoct one on reply. This Court has recently reaffirmed that arguments raised for the first time in a reply brief are waived. *Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817, 833 (Fed. Cir. 2010).

reference to a computer at all. The method simply requires generating data for describing a transformation of color content.

That is something that could be done in the human brain or using a pencil and paper. A human can generate "first data for describing a device dependent transformation of color information content of the image to a device independent color space through use of measured chromatic stimuli" by noting that what any given device records as a certain level of light intensity corresponds to what the human eye sees as blue. The same person can generate "generating second data for describing a device dependent transformation of spatial information content of the image in said device independent color space through use of spatial stimuli" by noting that a device's coordinate system for location in an image corresponds to the sky. They can then "combine the first and second data" by observing that when both pieces of information are present, the sky is blue.[5] Because the claims can be performed in the human mind, they are impermissibly abstract.

It is true that the preamble to claim 10 contemplates that the data generated "*describes properties* of a device in a digital image information system." Claim 10 (emphasis added). But even were the preamble limiting – something Digitech has not argued – the fact that the thing being described is a device does not mean that

---

[5] At no point in its nineteen different argument sections does Digitech attempt to distinguish dependent claims 11-15 from claim 10. Thus, as the district court concluded, those claims stand or fall together. JA11, JA16-17.

the data itself is a device or is limited to a device.  A book can describe a car in great detail, but the book is not the car.

Digitech spends a great deal of time focused on the specification of its patent, suggesting that the specification implies the existence of a computer processing the data, and that any claim that requires a computer cannot be abstract. There are two problems with this argument.

First, the claims are not so limited. The "method" of these claims is a method of generating a device profile – the very thing the district court correctly concluded was not itself a machine or thing, but merely data.  The steps of claim 10 confirm that the method, like the device profile, is not tied to any physical thing.  To the contrary, the method comprises the steps of "generating first data," "generating second data," and "combining said first and second data into the device profile."  Thus, both the things being generated in the steps of the claims and the output of those steps are data; nothing more.  Digitech argues at great length that summary judgment was improper because its expert said that the method of these claims requires a computer.  *See, e.g.,* Digitech Br. at 32-36.  But that argument misses the point.  Even if it were correct that the system described in the *specification* required use of a computer, there is nothing in the *claims* that could not be performed with a pencil and paper or even the human mind.  Digitech now wants this court to commit "one of the cardinal sins of patent law – reading a

limitation from the written description into the claims." *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1340 (Fed. Cir. 2001). Even had Digitech not waived its right to argue claim construction below, this Court should resist that invitation.

Notably, Digitech itself says that the claims do not encompass a specific algorithm for generating this data. It is the mere act of generating data, however it is done, that Digitech claims to own. Digitech Br. at 10 ("a device profile may optionally include algorithms or enumerate algorithms, but [] it need not do so."). Digitech might have described in its specification a computer system that could be used to generate this data, but it did nothing whatsoever to limit claim 10 to such a computer system.[6]

Second, even if the claims were construed to be limited to a computer or to be associated with a digital image – something Digitech did *not* ask the district court to do – that fact could not save them from unpatentability. The claims held abstract in *Bilski II*, 130 S. Ct. at 3231 (2010), would surely have fared no better if Bilski added "in a computer" to the end of his claim to own the idea of hedging risk. Nor should Digitech's claims to data magically become patentable even if this Court were to *sua sponte* import a computer limitation into those claims.

---

[6] Nor do dependent claims 11-15 add limitations to any computer technology. As the district court found, JA11, each of those claims merely define the data being generated in more detail.

Digitech hangs its argument on the idea that if it can just convince this Court to read some computer technology, or at least a digital image, into claims that lack such structure, it should prevail. Not so.

Both the Supreme Court and this Court repeatedly have rejected such empty formalism. Claims that could be performed with pen and paper or in one's mind cannot be saved by calling for them to be implemented with general-purpose computer technology. *CLS Bank*, 717 F.3d at 1269 (plurality opinion). It is not sufficient to tack on a machine implementation limitation as an afterthought to a claim directed to a concept. The implementation itself, not just the concept, must be specific and inventive. As the Supreme Court articulated the principle in *Mayo*, 132 S. Ct. at 1300, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." Indeed, it is the real-world implementation itself, not the idea, that must contain the "inventive concept." *Id.* at 1294 (quoting *Parker*, 437 U.S. at 594).

Reciting that the claimed subject matter is implemented in a general-purpose computer is not enough to render an idea patent-eligible. In *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1331 (Fed. Cir. 2012), for example, the Federal Circuit held unpatentable a claim to a "computer-aided method" with far more structural limitations than the claims of the '415 patent. The claim language at issue in

- 26 -

*Dealertrack* contained generic references to computer devices (including, for example, a "remote application entry and display device" and "terminal device"). *Id.* But, like the claims here, they were not limited to any particular pieces of equipment. *Id.* at 1332-33. This Court rejected the idea that claiming implementation using a general-purpose computer effectively limited the claim: "The claims here do not require a specific application, nor are they tied to a particular machine. The computer here does no more than the computer in *Benson* to limit the scope of the claim." *Id.* at 1333-34. "Simply adding a 'computer aided' limitation to a claim covering an abstract concept, without more, is insufficient to render the claim patent eligible." *Id.* at 1333. *See also Fort Properties*, 671 F.3d at 1323-24 (claims abstract where applicant "simply added a computer limitation to claims covering an abstract concept—that is, the computer limitation is simply insignificant post-solution activity.").

Most recently, in *Accenture Global Services GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336 (Fed. Cir. 2013), the Federal Circuit held unpatentable claims to insurance claims-processing software, despite the fact that those claims were written in the form of computer systems with machine elements. The hardware elements of those claims were general-purpose computer technology. The Court found that such general-purpose computer elements "do not provide sufficient additional features or limit the abstract concept in a meaningful way." *Id.* at 1345.

Thus, even were this Court to credit the testimony of Digitech's expert Dr. Cannizzo, who filed a declaration in which he offered his interpretation of the patent specification, the limitations he proposed reading into the claims could not help Digitech. Even if the device profile were to "tangibly exist" as a tag appended to a digital image or be embedded on a processor, JA 264 ¶5, the mere attachment of claimed data to other data (a digital image) or its inclusion in a general-purpose computer system does not render that data patentable subject matter.

By contrast, *Research Corporation Technologies, Inc. v. Microsoft Corp.*, 627 F.3d 859, 863 (Fed. Cir. 2010), and *Ultramercial*, the cases on which Digitech primarily relies, involved advances in computer technology that were dependent on the specific machine and operated to improve its performance. The *Ultramercial* court, for instance, concluded that "many of these steps require intricate and complex computer programming." *Ultramercial*, 722 F.3d at 1350. So too with *Research Corp.* In that case, this Court relied on the "palpable applications"—a particular type of image manipulation—found *in the claims*. Various claims in the *Research Corp.* patent required high-contrast film, a film printer, and printer and display devices. *Research Corp.* at 869. That cannot be said of the claims at issue here—which (to the extent to which they involve computers at all) recite generalized functions without describing any specific programming needed to

- 28 -

perform that function.

*Ultramercial* asks whether a claim includes meaningful limitations restricting it to a specific, tangible implementation rather than merely an abstract idea. To argue that it meets this test, Digitech relies entirely on disclosures from the specification. But it is the claims, not the specification, that define the boundaries of the invention, and the limitations to which Digitech points are not present in the claims. *See, e.g., Accenture*, 728 F.3d at 1345 ("the complexity of the implementing software or the level of detail in the specification does not transform a claim reciting only an abstract concept into a patent-eligible system or method."). Method claims 10-15 as written cover only the generation of data, something that could be done in the human mind, and reading in a requirement to perform that (otherwise abstract) process on a general-purpose computer would not save the claims.

Digitech confuses the purported benefits of the invention discussed in the specification with the claimed invention. What matters to the abstractness question is the scope of the actual claims, not the various descriptions in the specification. Perhaps some patent-eligible invention could be claimed based on the disclosures in the specification. But the claims here make no effort to do so. The patentee sought to claim abstract ideas rather than limit itself to tangible new technological implementations. Section 101 does not permit that.

### B.    Digitech's Method Claims Fail the Machine-or-Transformation Test

The district court also correctly held that the claims were unpatentably abstract because they fail the machine-or-transformation test this Court articulated *en banc* in *Bilski*, 545 F.3d 943 (en banc), *aff'd sub nom. Bilski II*, 130 S.Ct. 3218. While that test is not determinative, it provides a "useful and important clue" as to the patentability of a claim. *Bilski*, 130 S.Ct. at 3221.[7]

### 1.    Digitech's Claims Are Not Tied to a Specific Machine

A claimed invention is limited to a specific machine when it is "truly drawn to [a] specific apparatus distinct from other apparatus[es] capable of performing the identical functions." *In re Abele*, 684 F.2d at 909; *see CyberSource*, 654 F.3d at 1374-75. Digitech's claims cannot meet that test no matter how they are construed. There are no specific hardware or software limitations in claims 10-15. Indeed, there are no hardware or software limitations at all. And even if this Court were to read in the limitations Digitech now argues for,[8] those limitations would at

---

[7] Digitech asserts that a process is patent-eligible if it meets the machine-or-transformation test. Digitech Br. at 30. That is incorrect. The Supreme Court has held that a claim can be unpatentable even if it meets the machine-or-transformation test. *Mayo*, 132 S.Ct. at 1302-03. Thus, while failure to meet the machine-or-transformation test will often doom a patent claim, showing that a claim is tied to a specific machine or that a transformation to another state or thing is central to the claims will not necessarily show that it is patent-eligible.

[8] Digitech takes inconsistent positions on whether it wants specific hardware limitations to be read into the claims. At some points it argues that claim 10 requires "an input device such as a camera, . . . specialized electronic equipment

- 30 -

most implement the claim in a general apparatus, not a specific one distinct from other apparatuses that can perform the same function. Digitech nowhere argues for a limitation to a particular device. Instead, it says that the specific machine is the "processor device" it would add to the claims. Digitech Br. at 31. But a processor is not a specific machine. Far from it. It is as general a piece of computer technology as computers offer. Similarly, Digitech argues that the method of claim 10 "must be performed by a specialized processor *or a general-purpose computer*." *Id*. There can be no clearer admission that, even as Digitech would construe the claims, they are not tied to a specific machine; any machine will do.

The prohibition on patenting ideas affirmed in *Bilski* would be meaningless if it could be evaded just by reciting that the claimed idea is to be implemented using the prevailing generic information processing technology. That is why the Supreme Court has noted that claims that require a computer to function, and are equally suitable for use in any type of computer, effectively preempt the use of an idea and are unpatentable. *Gottschalk*, 409 U.S. 63. Even claims that are limited

---

such as a microdensitometer, and . . . a processor." Digitech Br. at 46. But at other points Digitech argues that its claims are not limited to any particular algorithm, technology or device, and indeed might or might not encompass an algorithm at all. This is, Digitech tells us, "evident from the plain claim language, which does not specify an algorithm." Digitech Br. at 10. Nor are the asserted claims limited to any technology; Digitech tells us that its claims can be performed on a special purpose computer or a general-purpose computer, *id*. at 31, and that they are "device independent." *Id*. at 44. The district court correctly rejected Digitech's sometimes-yes, sometimes-no effort to read specific devices into claims that do not even arguably specify them.

to a specific context or industry are unpatentable if the machine itself is not novel or is obvious, because the addition of a generic computer to a claimed intangible process does not remove that intangible process from the realm of abstraction for the purpose of a section 101 analysis. *Parker*, 437 U.S. 584.

### 2.    Digitech's Claims Do Not Transform an Article to Another State or Thing

Under the transformation prong of the machine-or-transformation test, "[a] claimed process is patent-eligible if it transforms an article into a different state or thing. This transformation must be central to the purpose of the claimed process." *Bilski*, 545 F.3d at 962.

What is the supposed transformation of physical articles that is "central" to the purpose of Digitech's patented invention? According to claim 10, it is combining two pieces of data to produce a third piece of data. At most, if Digitech's claim construction is to be believed, it is the changing of bits of data in a general-purpose computer to different bits of data in the same computer. But that is not the sort of transformation the Supreme Court has found patentable. A process of administering a drug to a patient, for example, involves actually putting a chemical into a patient's body in a way that treats a disease. That surely does transform an "article"—a living human being—into a different state. Claim 10, by contrast, does not involve physical changes to anything.

It is true that in limited circumstances, the transformation of data can itself

satisfy the machine-or-transformation test. But those circumstances are not present here. The *Bilski* court restricted such "transformation of data" claims to those where the data visually depicts actual physical world objects, holding that a process was patentable only "[s]o long as the claimed process is limited to a practical application of a fundamental principle to transform specific data, and the claim is limited to a visual depiction that represents specific physical objects or substances." *Bilski*, 545 F.3d at 963. By contrast, if the invention is claimed more broadly, so that it is not specific to data that visually depicts specific physical objects, it is invalid. *Id*. at 962, 963 (citing the claims invalidated in *In re Abele,* 684 F.2d at 909 and *In re Schrader*, 22 F.3d 290, 294 (Fed. Cir. 1994)).

Digitech suggests that because the data it generates represent a device profile, and the device profile is information that is attached as a tagged file structure that accompanies a device to help generate a digital image, JA 62 at 1:64-2:1 and that image represents a photograph, and the photograph in turn represents the real world, the invention is patentable because the data are ultimately representative of real things. But by that logic, every computer claim, no matter how abstract, is patentable because the data it manipulates ultimately relates to something physical. That is not the law. The claim in *Bilski* was for a system of hedging the pricing of commodities. The data in Bilski's system related to legal obligations to buy and sell those commodities. But those legal obligations in turn

reflected real world objects—parties buying and selling coal. That was not enough to render Bilski's claim patentable. Nor was Comiskey's method of drafting a will to compel arbitration patentable, despite the fact that the wills in question disposed of the ownership of real and personal property. *In re Comiskey,* 554 F.3d 967 (Fed.Cir. 2009). In both cases, the connection to the physical world was too indirect:

> Just as the *Comiskey* claims as a whole were directed to the mental process of arbitrating a dispute to decide its resolution, the claimed process here as a whole is directed to the mental and mathematical process of identifying transactions that would hedge risk. The fact that the claim requires the identified transactions actually to be made does no more to alter the character of the claim as a whole than the fact that the claims in *Comiskey* required a decision to actually be rendered in the arbitration–i.e., in neither case do the claims require the use of any particular machine or achieve any eligible transformation.

*Bilski*, 545 F.3d at 965.

Digitech's methods don't transform data that visually depicts physical objects. At most they transform bits of data representative of information into other bits of data that also represent information. This is not an improvement in X-ray tomography, as in *Abele*. Rather, it is "transformations or manipulations simply of public or private legal obligations or relationships, business risks, or other such abstractions," of the kind that *Bilski* held "cannot meet the test because they are not physical objects or substances, and they are not representative of physical objects or substances." *Bilski*, 545 F.3d at 963.

## C.      Digitech's Device Profile Claims Are Also Unpatentably Abstract

The abstract ideas doctrine that dooms Digitech's method claims 10-15 is also fatal to its "device profile" claims.  While this Court can and should affirm the district court on the ground that it correctly found a "device profile" to be outside the four categories of statutory subject matter, it can also affirm the district court's ruling that those claims are invalid on the independent ground that they are impermissibly abstract.[9]  Claim 10 makes it quite clear that a device profile is nothing more than data; it is the combination of "first and second data."  A claim to data standing alone is impermissibly abstract, as demonstrated above. Even if a "device profile" were construed to be some sort of machine or article of manufacture (or a composition of matter, as Digitech at one point suggests), it is well-established that simply converting an unpatentably abstract method into system or device form does not render it patentable.

This Court has repeatedly held that an unpatentably abstract method claim

---

[9]    It is a firmly established principle of appellate procedure that a party that prevailed in the district court may defend the judgment on any ground supported in the record, whether or not the district court ruled in its favor on that ground.  *Clock Spring, L.P. v. Wrapmaster, Inc.*, 560 F.3d 1317, 1324 (Fed. Cir. 2009) ("We may affirm a grant of summary judgment on a ground supported in the record but not addressed by the district court if we conclude that there was no genuine issue as to any material fact") (citation and internal quotation marks omitted); *AquaTex Indus. v. Techniche Solutions*, 479 F.3d 1320, 1328 (Fed. Cir. 2007) (affirming grant of summary judgment even though it found both the district court's stated grounds for summary judgment erroneous).

cannot be saved by recasting the same method as a system or article of manufacture claim, merely adding standard, off-the-shelf computer technology or computer-readable media. In *CyberSource*, for example, the patentee asserted both method and article of manufacture claims and argued "that coupling the unpatentable mental process recited in claim 3 with a manufacture or machine renders it patent-eligible." *CyberSource,* 654 F.3d at 1374. The Federal Circuit rejected CyberSource's argument, finding instead that what mattered to the claim's patentability was whether it was "'truly drawn to a specific' computer readable medium, rather than to the underlying method of credit card fraud detection." *Id*. at 1375; *accord In re Abele*, 684 F.2d at 909 ("[T]he burden [is] on the applicant to demonstrate that the claims [were] truly drawn to [a] specific apparatus distinct from other apparatus capable of performing the identical functions.").

In *CLS Bank*, the Federal Circuit, sitting en banc, considered the patent eligibility of computer-implemented methods and systems. 717 F.3d 1269 (Fed. Cir. 2013) (en banc). Although none of the opinions garnered a majority, they provide guidance for approaching the system and article of manufacture claims here. A majority of the Court (eight of ten judges) agreed that form should not trump substance and that the system and method claims at issue in *CLS Bank* were sufficiently similar that they should rise or fall together. *Id*. at 1288 (plurality opinion) ("under § 101 we must look past drafting formalities and let the true

substance of the claim guide our analysis."); *id.* at 1322 (Newman, J., concurring) ("Patent eligibility does not turn on the ingenuity of the draftsman."); *id.* at 1327 (Linn & O'Malley, J., dissenting) ("The method, media, and system claims we review today must rise and fall together; either they are all patent eligible or they are not."); *see also Accenture*, 728 F.3d at 1345 (holding that system claims are invalid where they do not differ significantly from invalid method claims). These rulings followed the Supreme Court's decision in *Mayo* where the Supreme Court warned that "patent eligibility [does not] 'depend simply on the draftsman's art.'" 132 S. Ct. at 1294 (quoting *Parker*, 437 U.S. at 593).

Thus, a system claim that "sets forth the same steps" as a method claim should be ineligible under Section 101 where the hardware recited does not "offer[] a meaningful limitation beyond generally linking 'the use of the [method] to a particular technological environment,' that is, implementation via computers." *CLS Bank*, 717 F.3d at 1291 (plurality opinion) (quoting *Bilski II*, 130 S. Ct. at 3230).

Even if a "device profile" is a "tangible" thing, as Digitech argues, it is unpatentable because it is no more than the thing produced by the unpatentably abstract method of claim 10. Indeed, the language used in claim 1 to describe the device profile is copied directly from the language used in claim 10.

### D.    Digitech's Arguments Are Likely to Preempt a Wide Array of Applications

Digitech advances a large number of arguments in an effort to avoid the consequence of the controlling Supreme Court and Federal Circuit precedent it ignores.  Some of those arguments are internally contradictory.  For example, Digitech argues (in what is nominally part of the Statement of Facts) that its claims do not cover all practical applications of the abstract idea of using a device profile for digital image processing.  Digitech Br. at 12; *see also id.* at 42-43.  But that argument follows right on the heels of two pages in which Digitech asserts that its claims cover, without limitation, "the myriad of variables that go into every photo."  *Id.* at 11.  Indeed, Digitech argues that its claims are not limited to any particular algorithm, and indeed might or might not encompass an algorithm at all. This is, Digitech tells us, "evident from the plain claim language, which does not specify an algorithm."  Digitech Br. at 10.  Nor is it limited to any technology; Digitech tells us that its claims can be performed on a special purpose computer or a general-purpose computer, *id.* at 31, and that they are "device independent."  *Id.* at 44.  A claim that reads on generating two pieces of data and combining them, not tied to any specific technology or device, requiring no algorithm, possessing no other limitation, and which covers any combination of "the myriad of variables that go into every photo" is precisely the sort of abstract claim that is likely to preempt a large swath of inventive territory.

## **CONCLUSION**

For the foregoing reasons, the judgment of the district court should be affirmed.

Dated:  December 19, 2013          Respectfully submitted,


                                   */s/ Steven J. Routh*
                                   Steven J. Routh
                                   Sten Jensen
                                   John R. Inge
                                   ORRICK, HERRINGTON & SUTCLIFFE LLP
                                   1152 15th Street, NW
                                   Washington, D.C. 20005-1706
                                   Telephone:  202-339-8400
                                   Fax:  202-339-8500
                                   srouth@orrick.com
                                   sjensen@orrick.com
                                   jinge@orrick.com

                                   Christopher P. Broderick
                                   William H. Wright
                                   ORRICK, HERRINGTON & SUTCLIFFE LLP
                                   777 South Figueroa Street, Suite 3200
                                   Los Angeles, CA 90017-5855
                                   Telephone:  213-629-2020
                                   Fax: 213-612-2499
                                   cbroderick@orrick.com
                                   wwright@orrick.com

                                   *Attorneys for Defendants-Appellees*
                                   *FUJIFILM Corporation, Sigma Corporation,*
                                   *Sigma Corporation of America, Micro*
                                   *Electronics, Inc., Pentax Ricoh Imaging Co.,*
                                   *Ltd., Pentax Ricoh Imaging Americas*
                                   *Corporation, Ricoh Company, Ltd., Ricoh*
                                   *Americas Corporation, and Konica Minolta*
                                   *Business Solutions USA, Inc.*

*/s/ Mark A. Lemley\**

Mark A. Lemley
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: 415-362-6666
Fax:  415-236-6300
mlemley@law.stanford.edu

*Attorney for Defendants-Appellees Electronics For Imaging, Inc.; Sakar International, Inc. (doing business as Vivitar); General Imaging Company; Overstock.com, Inc.; Newegg, Inc. and Newegg.com, Inc.; Xerox Corporation; Toshiba Corporation; Toshiba America Business Solutions, Inc.; Toshiba America Information Systems, Inc., and Toshiba America, Inc.*

*  Mark A. Lemley consented to the use of his electronic signature herein.

*/s/ Ezra Sutton\**
**Ezra Sutton & Associates, P.A.**
900 Route 9 North
Plaza 9, Suite 201
Woodbridge, New Jersey 07095
Telephone:  732-634-3520
Fax:  732-634-3511
esutton@ezrasutton.com

*Attorney for Sakar International, Inc.*

*  Ezra Sutton consented to the use of his electronic signature herein.

/s/ *Frank P. Coté**

Frank P. Coté
William C. Rooklidge
Frank P. Coté
Mark L. Blake
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612-4408
Telephone: 949-851-3939
Fax: 949-553-7539
wrooklidge@jonesday.com
fcote@jonesday.com
mblake@jonesday.com

*Attorneys for Defendant-Appellee Electronics
for Imaging, Inc.*

* Frank P. Coté consented to the use of his
electronic signature herein.

/s/ *Paul T. Meiklejohn**

Paul T. Meiklejohn
Mudit Kakar
DORSEY & WHITNEY LLP
701 Fifth Avenue, Suite 6100
Seattle, WA 98104
Telephone: 206-903-8800
Fax: 206-903-8820
meiklejohn.paul@dorsey.com
kakar.mudit@dorsey.com

*Attorneys for Defendants-Appellees Toshiba
Corporation; Toshiba America Business
Solutions, Inc.; Toshiba America Information
Systems, Inc., and Toshiba America, Inc.*

* Paul T. Meiklejohn consented to the use of
his electronic signature herein.

/s/ *Gregory S. Tamkin**

Gregory S. Tamkin
Case Collard
DORSEY & WHITNEY LLP
1400 Wewatta St., Suite 400
Denver, CO 80202
Telephone: 303-629-3400
Fax:  303-629-3450
tamkin.greg@dorsey.com
collard.case@dorsey.com

*Attorneys for Defendant-Appellee Buy.com, Inc.*

*  Gregory S. Tamkin consented to the use of
his electronic signature herein.

/s/ *Anthony S. Gabrielson**

Anthony S. Gabrielson
Tiffany D. Gehrke
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive
6300 Willis Tower
Telephone: 312-474-6300
Fax:  312-474-0448
agabrielson@marshallip.com
tgehrke@marshallip.com

*Attorneys for Defendant-Appellee CDW LLC*

*  Anthony S. Gabrielson consented to the use
of his electronic signature herein.

*/s/ J. Rick Taché\**

J. Rick Taché
GREENBERG TRAURIG, LLP
3161 Michelson Drive, Suite 1000
Irvine, CA  92612
Telephone: 949-732-6500
Fax:  949-732-6501
tacher@gtlaw.com

*Attorneys for Defendant-Appellee
LEAF IMAGING, LTD. (doing business
as Mamiyaleaf), and MAMIYA AMERICA
CORPORATION, MAMIYA DIGITAL
IMAGING CO., LTD.*

\*  J. Rick Taché consented to the use of his
electronic signature herein.

*/s/ Mark C. Johnson\**

Mark C. Johnson
Kyle B. Fleming
Nicholas J. Gingo
RENNER, OTTO, BOISSELLE &
SKLAR, LLP
1621 Euclid Avenue, 19th Floor
Cleveland, Ohio  44115
Telephone:  216-621-1113
Fax:  216-621-6165
mjohnson@rennerotto.com
kfleming@rennerotto.com
ngingo@rennerotto.com

Attorneys for Defendant-Appellee
VICTOR HASSELBLAD AB and
HASSELBLAD USA, INC.

\*  Mark C. Johnson consented to the use of his
electronic signature herein.

- 44 -

_/s/ Aaron Stiefel*_

Aaron Stiefel
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
Telephone:  212-836-8442
Fax:  212-836-8689
Aaron.stiefel@kayescholer.com
Attorney for Defendant-Appellee
B&H FOTO & ELECTRONICS CORP.

*  Aaron Stiefel consented to the use of his electronic signature herein.

_/s/ Michael H. Jacobs*_

Michael H. Jacobs
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC  20009
Telephone:  202-624-2500
Fax:  202-628-5116
mjacobs@crowell.com

_Attorneys for Defendant-Appellee_
_LEICA CAMERA AG and LEICA CAMERA_
_INC._

*  Michael H. Jacobs consented to the use of his electronic signature herein.

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2013, I filed the foregoing document with the Court through this United States Court of Appeals for the Federal Circuit's CM/ECF system. Pursuant to Federal Rules of Appellate Procedure and the Federal Circuit Rules, the "Notice of Electronic Filing" automatically generated by CM/ECF at the time the document is filed with the system constitutes automatic service of the document on counsel of record who have consented to electronic service.

DATED:  December 20, 2013

*/s/ Steven J. Routh*
Steven J. Routh
ORRICK, HERRINGTON & SUTCLIFFE, LLP

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B), because it contains 9,215 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).   This brief has been prepared in a proportionally spaced typeface using Microsoft Word, in 14 Point Times New Roman.

DATED:  December 19, 2013

*/s/ Steven J. Routh*
Steven J. Routh
ORRICK, HERRINGTON & SUTCLIFFE, LLP